## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50646

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2019

Lyle W. Cayce
Clerk

CITY OF AUSTIN,

  Plaintiff - Appellee

v.

KEN PAXTON, Attorney General of the State of Texas; TEXAS
WORKFORCE COMMISSION,

  Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas

Before CLEMENT, ELROD, and DUNCAN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The City of Austin enacted a housing ordinance that prohibits landlords from refusing tenants who wish to pay their rent with federal housing vouchers. Shortly thereafter, the State of Texas enacted a statute that sought to invalidate the City's ordinance and to allow landlords to continue to refuse federal vouchers. The City then sued Ken Paxton, the Texas Attorney General, and the Texas Workforce Commission (together, the "State"), seeking to enjoin the Texas statute, alleging it was preempted by federal law. The State moved to dismiss the complaint for lack of jurisdiction based on standing and Eleventh Amendment sovereign immunity and for the City's failure to state

No. 18-50646

any plausible claims. The district court denied the State's motion, holding that the City had standing, and that the City's suit could proceed against Attorney General Paxton and the Texas Workforce Commission under the *Ex parte Young* exception to sovereign immunity. The State then brought this interlocutory appeal with respect to the district court's sovereign-immunity holding only. Because Attorney General Paxton does not possess the requisite "connection to the enforcement" of the Texas statute to satisfy *Ex parte Young*, and because the Texas Workforce Commission is a state agency immune to suit, we REVERSE and REMAND to the district court.

## I.

The Federal Housing Choice Voucher Program (the "voucher program" or the "program") allows low-income families to use federally-funded vouchers to access the private rental market. The United States Department of Housing and Urban Development ("HUD") funds the program, but state and local public-housing authorities administer it. A voucher recipient is responsible for finding a landlord that will accept federal housing vouchers. *See* 24 C.F.R. § 982.302(a).

In December 2014, the City adopted a housing ordinance (the "Ordinance"), that bars landlords from refusing to rent to tenants paying their rent with program vouchers. The City contends that the Ordinance helps to "remove barriers to fair housing choice by allowing voucher holders . . . [to rent] housing in higher opportunity neighborhoods in the City." The City asserts that enacting the Ordinance is part of its obligation under the voucher program's mandate: "[the program was created] [f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a).

In response to the Ordinance, the Texas legislature enacted Texas Local Government Code § 250.007 to prevent municipalities and counties from

adopting ordinances that restrict landlords' rights to refuse to rent to voucher program participants. Section 250.007(a) bars municipalities or counties from "adopt[ing] or enforc[ing] an ordinance or regulation that prohibits [a landlord] . . . from refusing to lease or rent [a] housing accommodation to a person because the person's lawful source of income to pay rent includes funding from a federal housing assistance program." TEX. LOC. GOV'T CODE § 250.007(a). Section 250.007(c) permits municipalities and counties to create incentive and other programs that encourage landlords to allow federal housing vouchers. *Id.* § 250.007(c).

The City originally sued the State of Texas and Greg Abbott, the Governor of Texas, alleging that federal law preempts § 250.007 because § 250.007 "obstructs [Congress's] purposes and objectives" in creating the voucher program. The State of Texas moved to dismiss the proceeding for (i) lack of subject-matter jurisdiction based on standing and sovereign immunity, and (ii) the City's failure to state any plausible claims. The City then amended its complaint, replacing Governor Abbott with Ken Paxton, the Texas Attorney General, in his official capacity, and the Texas Workforce Commission.

The district court denied the State's motion to dismiss for lack of jurisdiction, rejecting the State's standing and sovereign-immunity arguments. The court dismissed the City's conflict-preemption claim and one of its express-preemption claims but denied the State's motion to dismiss the City's second express-preemption claim. The issue in this interlocutory appeal is whether Attorney General Paxton and the Texas Workforce Commission are subject to the *Ex parte Young* exception to Eleventh Amendment sovereign immunity.

No. 18-50646

## II.

We review the district court's jurisdictional determination of sovereign immunity de novo. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015); *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 962 (5th Cir. 2014).

## III.

In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) ("Sovereign immunity is the privilege of the sovereign not to be sued without its consent."); *see also Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting [s]tates may not be sued by private individuals in federal court."). The Supreme Court has recognized that sovereign immunity also prohibits suits against state officials or agencies that are effectively suits against a state. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663−69 (1974) (extending sovereign immunity to state officers in their official capacities); *Ford Motor Co. v. Dep't of Treas.*, 323 U.S. 459, 463−64 (1945) (barring suits in which the state is a real party in interest, despite not being a named defendant). In short, Eleventh Amendment immunity is not limited to cases in which states are named as defendants. So, unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit. *See AT&T Commc'ns v. Bellsouth Telecomms. Inc.*, 238 F.3d 636, 644−45 (5th Cir. 2001).

Enter the *Ex parte Young* exception to Eleventh Amendment sovereign immunity, which was established in its namesake case. *See* 209 U.S. 123 (1908). The *Young* exception is a legal fiction that allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328

No. 18-50646

(5th Cir. 2013). For the exception to apply, the state official, "by virtue of his office," must have "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Young*, 209 U.S. at 157. The text of the challenged law need not actually state the official's duty to enforce it, although such a statement may make that duty clearer. *Id.*

The Supreme Court's recent *Ex parte Young* jurisprudence explains that the inquiry into whether a suit is subject to the *Young* exception does not require an analysis of the merits of the claim. *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002). Rather, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Va. Office*, 563 U.S. at 255 (alteration in original) (quoting *Verizon*, 535 U.S. at 645).

It is undisputed that Texas has not consented to this suit and that Congress has not abrogated the State's immunity. The question, then, is whether the defendants are subject to suit under the *Ex parte Young* exception.

*A. Ken Paxton, Texas Attorney General*

We begin with whether the district court was correct in holding that Attorney General Paxton was subject to the *Young* exception. In conducting our *Ex parte Young* analysis, we first consider whether the plaintiff has named the proper defendant or defendants. Where a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, our *Young* analysis ends. For example, in *Morris v. Livingston*, an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ") sued the Governor of Texas, challenging the constitutionality of a statute that required TDCJ inmates to pay a "health care services fee" if an inmate initiated a visit to a health care provider. 739 F.3d 740, 742 (5th Cir.

5

2014). The statute specifically tasked the TDCJ as responsible for its enforcement. *Id.* at 745–46. Thus, a panel of this court held that the Governor was an improper defendant and upheld the district court's dismissal of the inmate's claims against him. *Id.* at 746 ("[The challenged statute] makes clear that TDCJ is the agency responsible for the section's administration and enforcement . . . . It does not [] task [the] Governor [] with its enforcement."). Where no state official or agency is named in the statute in question, we consider whether the state official actually has the authority to enforce the challenged law. Here, the State concedes in its brief that the Attorney General has the authority to enforce § 250.007: "[T]he Attorney General does have the power to enforce this provision [§ 250.007]."

Once it's clear that the named defendant is proper, our precedent directs us to read the language in *Young* and *Verizon* together. Such an approach results in two analyses that help us to determine whether the *Young* exception applies to the relevant state official. We conduct a *Verizon* "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." 535 U.S. at 645. We also decide whether the official in question has a "sufficient connection [to] the enforcement" of the challenged act. *Young*, 209 U.S. at 157; *see Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) ("First, as the district court noted, [plaintiff] claims an ongoing violation of federal law and seeks prospective relief . . . . Next, we hold state defendants have a sufficient connection to the enforcement of the [challenged law].").

The district court held that the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645. The court reasoned that the City's allegation that "§ 250.007 is invalid and preempted by federal law . . . qualifies as an ongoing violation of federal law for the purposes of *Ex parte Young*." This court has previously held

that an allegation in a plaintiff's complaint of federal preemption of the law at issue satisfies the *Verizon* standard for the purposes of the *Young* exception. *See Air Evac*, 851 F.3d at 519 (holding that because the complaint claimed federal law "expressly preempt[ed] the [challenged Texas law] and [sought] an injunction and declaratory judgment," plaintiff claimed "an ongoing violation of federal law and [sought] prospective relief"); *see also Green Valley Special Util. Dist. v. Walker*, 324 F.R.D. 176, 182 (W.D. Tex. 2018). Thus, the district court was correct with respect to its *Verizon* analysis.

However, we next hold that the district court was incorrect in finding that Attorney General Paxton has a sufficient "connection to the enforcement" of § 250.007 to be subject to the *Ex parte Young* exception. What constitutes a sufficient "connection to [] enforcement" is not clear from our jurisprudence. In *Okpalobi v. Foster*, an en banc court deciding whether the Governor of Louisiana and Attorney General were entitled to Eleventh Amendment sovereign immunity examined the "connection" element of the "connection [to] the enforcement" language in *Young*. 244 F.3d 405, 410−24 (5th Cir. 2001) (plurality op.); *see Young*, 209 U.S. at 157. The *Okpalobi* plurality held that, for a state official to have the requisite "connection" to apply the *Young* exception, the official must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Okpalobi*, 244 F.3d at 416. (This same "connection" standard was also phrased in *Okpalobi* as requiring the state official in question to be "specially charged with the duty to enforce the statute" and "be threatening to exercise that duty." *Id.* at 414.)

But panels have recognized that this definition of "connection"—and the entire Eleventh Amendment sovereign immunity analysis in *Okpalobi*—may not be binding precedent. In *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010), a panel of this court "explicitly declin[ed] to follow" the *Okpalobi* "connection" standard because it was not "binding precedent." *Air Evac*, 851 F.3d at 518; *see*

*K.P.*, 627 F.3d at 124 ("Defendants rely heavily on the lead opinion in *Okpalobi* for the proposition that a 'special' relationship—not just 'some connection'—needs to exist [between a state official and the challenged law to apply the *Young* exception]. Because that part of the en banc opinion did not garner majority support, the Eleventh Amendment analysis is not binding precedent." (citations omitted)). Further, the panel in *Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation* noted *K.P.*'s holding regarding *Okpalobi*'s Eleventh Amendment analysis but declined to address whether it found that part of the opinion to be precedential. *See Air Evac*, 851 F.3d at 518 ("[T]he Eleventh Amendment analysis in *Okpalobi* . . . received support only from a plurality of our *en banc* court[] [and] the majority decided the case on standing. Subsequently, in *K.P.*, our court stated . . . [that] 'the Eleventh Amendment analysis [in *Okpalobi*] is not binding precedent.'" (citations omitted) (quoting *K.P.*, 627 F.3d at 124)). On the other hand, the panel in *Morris*, a published case, quoted the *Okpalobi* "connection" standard as the correct one in analyzing whether a suit against a state official can proceed pursuant to the *Young* exception: "The required 'connection' [to apply the *Ex parte Young* exception to a state official] is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Morris*, 739 F.3d at 746 (quoting *Okpalobi*, 244 F.3d at 416).

So, unsurprisingly, the parties devote much of their briefs to arguing over whether Attorney General Paxton has a sufficient "connection" to the enforcement of § 250.007 under the *Okpalobi* standard (reiterated in *Morris*, 739 F.3d at 746). However, in the same vein as panels before us, we find that we need not define the outer bounds of this circuit's *Ex parte Young* analysis today—i.e., whether Attorney General Paxton must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise

that duty" to be subject to the exception. *Okpalobi*, 244 F.3d at 416; *see K.P.*, 627 F.3d at 124 ("We need not resolve whether *Ex parte Young* requires . . . a 'special relationship' between the state actor and the challenged statute."); *see also Air Evac*, 851 F.3d at 519 ("The parties debate whether *Ex parte Young* applies only when there is a threatened or actual proceeding to enforce the challenged state law. We need not resolve that question."). Instead, as explained below, we hold that Attorney General Paxton is not subject to the *Ex parte Young* exception because our *Young* caselaw requires a higher showing of "enforcement" than the City has proffered here.

Panels in this circuit have defined "enforcement" as "typically involv[ing] compulsion or constraint." *K.P.*, 627 F.3d at 124; *see Air Evac*, 851 F.3d at 519. The City contends that Paxton's "authority . . . constrain[s] the City's ability to enforce its ordinance, which is sufficient to show that *Ex [p]arte Young's* exception applies." It claims that the Attorney General has a "habit of suing or intervening in litigation against the City" involving municipal ordinances and policies to "enforce the supremacy of state law."[1] The City supports its allegation that this "habit" exists by pointing to several recent lawsuits where Paxton intervened in matters related to municipal ordinances. The district court agreed with the City, holding that the Attorney General "possesses 'some connection' to the enforcement of the statute" because "*he might similarly* bring a proceeding to enforce the supremacy of § 250.007." (emphasis added). We disagree.

In *K.P.*, a panel of this court considered whether the Louisiana Patients' Compensation Fund Oversight Board (the "Board") had the requisite

---

[1] Although the State concedes that Attorney General Paxton has the authority to enforce § 250.007, we recognize this is an odd type of enforcement authority. It appears § 250.007 would be enforced as a *defense* in a private suit brought by the City against a landlord refusing to abide by the Ordinance—and the Attorney General could intervene in such a suit to "enforce the supremacy of state law."

"connection [to] the enforcement" of a challenged statute that removed the medical malpractice cap for abortion providers. 627 F.3d at 119. The Board was charged with overseeing malpractice claims lodged against physicians enrolled in the Patient Compensation Fund, a program that capped physicians' liability in exchange for certain concessions. *Id.* The Board denied the plaintiffs coverage for an abortion-related malpractice claim, relying on the challenged statute. *Id.* Plaintiffs sued the Board, alleging the abortion statute was unconstitutional, and the Board invoked Eleventh Amendment sovereign immunity. *Id.* at 120. The *K.P.* panel noted that the Board was required to differentiate allowed claims and those not allowed under the challenged abortion statute and, thus, took an "active role" in enforcing the statute. *Id.* at 125. In concluding the Board had the requisite enforcement authority as to the abortion statute under *Young*, the panel held that, "the Board's role starts with deciding whether to have a medical review panel consider abortion claims and ends with deciding whether to pay them." *Id.*

In *Air Evac*, an air-ambulance company alleged that a state workers' compensation statute that set the maximum allowable reimbursement amount for medical services was preempted by federal law. 851 F.3d at 510−13. The air-ambulance company sought to employ the *Ex parte Young* exception to sue the Texas Commissioner of Insurance and the Texas Commissioner of Workers' Compensation. *Id.* The state officials in question engaged in "rate-setting" under the workers' compensation statute and oversaw the initial arbitration process for provider-insurer fee disputes. *Id.* Relying on *K.P.*'s definition of enforcement as "compulsion or constraint," the panel in *Air Evac* held that the state officials were subject to the *Young* exception because they "constrain[ed] [the air-ambulance company's] ability to collect more than the maximum-reimbursement rate under the [workers' compensation statute] . . . [and thus,] effectively ensur[ed] the maximum-reimbursement scheme [was] enforced

from start to finish." *Id.* at 519 (emphasis omitted). Importantly, the *Air Evac* panel noted that *direct* enforcement of the challenged law was not required: actions that constrained the plaintiffs were sufficient to apply the *Young* exception to the *Air Evac* officials under this court's *K.P.* holding. *Id.*

Likewise, in *NiGen Biotech, L.L.C. v. Paxton,* this court considered whether *Ex parte Young* could apply to Attorney General Paxton where he continuously refused to justify numerous "threatening letters" from his office to a manufacturer and distributor of dietary supplements and its retailers alleging that the manufacturer's packaging was in violation of the Texas Deceptive Trade Practices Act ("DTPA"). 804 F.3d at 392−95. There, the court did not explicitly examine Paxton's "connection to the enforcement" of the DTPA. *Id.* But the fact that Paxton sent letters threatening enforcement of the DTPA makes it clear that he had not only the authority to enforce the DTPA, but was also constraining the manufacturer's activities, in that it faced possible prosecution if it continued to make and distribute its products.[2]

In *K.P.*, *Air Evac*, and *NiGen*, the panels pointed to specific enforcement actions of the respective defendant state officials warranting the application of the *Young* exception: (i) prohibiting payment of claims under the abortion statute in *K.P.*, (ii) rate-setting in *Air Evac*, and (iii) sending letters threatening formal enforcement of the DTPA in *NiGen*. Here, the City has made no such showing with respect to the Attorney General's enforcement of § 250.007. Namely, none of the cases the City cites to demonstrate the Attorney General's "habit" of intervening in suits involving municipal ordinances to

---

[2] *NiGen* focused on whether the manufacturer's complaint alleged an ongoing violation of federal law for the purposes of the *Young* exception. 804 F.3d at 392−95. It did: (i) the manufacturer alleged the Attorney General was unconstitutionally restraining its commercial speech and punishing it without due process by sending the threatening letters, and (ii) the Attorney General was *violating* federal law because of his "continued refusal (now after nearly four years) to justify [his] threatening letters." *Id.* at 395.

11

"enforce the supremacy of state law" have any overlapping facts with this case or are even remotely related to the Ordinance. And the mere fact that the Attorney General *has* the authority to enforce § 250.007 cannot be said to "constrain" the City from enforcing the Ordinance. The City simply provides no evidence that the Attorney General may "similarly bring a proceeding" to enforce § 250.007: that he has chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do the same here. Further, we note that the City faces no consequences if it attempts to enforce its Ordinance. Contrary to what the City argues, this is not a case akin to *Steffel v. Thompson*, because the City faces no threat of criminal prosecution like the plaintiff there. *See* 415 U.S. 452, 475 (1974) (holding that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state [] statute"). Thus, we find that Attorney General Paxton lacks the requisite "connection to the enforcement" of § 250.007. And although we don't opine on the *Okpalobi* "connection" standard, we recognize that this circuit's caselaw requires some scintilla of "enforcement" by the relevant state official with respect to the challenged law. We see no "compulsion or constraint" on the part of the Attorney General here. Accordingly, the City's suit against Attorney General Paxton is barred by Eleventh Amendment sovereign immunity.

We also recognize that our standing jurisprudence bolsters this conclusion. This court has acknowledged that our Article III standing analysis and *Ex parte Young* analysis "significantly overlap." *Air Evac*, 851 F.3d at 520. Generally, to have standing to sue under Article III, a plaintiff must allege: (i) an injury-in-fact that is (ii) fairly traceable to the defendant's challenged action and (iii) redressable by a favorable outcome. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560−561 (noting that an injury-in-fact must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"). A plaintiff "can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201−02, by establishing actual present harm or a *significant possibility of future harm.*" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) (emphasis added) (quoting *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003)).

In fact, it may be the case that an official's "connection to [] enforcement" is satisfied when standing has been established. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir.  2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex parte Young*."). That is, because it's been determined that an official can act, and there's a significant possibility that he or she will act to harm a plaintiff, the official has engaged in enough "compulsion or constraint" to apply the *Young* exception. And even if Article III standing's requirement of a "significant possibility of future harm" and the "connection to [] enforcement" requirement under our precedent are not identical, there are certainly notable similarities between the two. At the minimum, our caselaw shows that a finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question. *See*, *e.g.*, *K.P.*, 627 F.3d at 122 (addressing standing in an appeal of  dismissal based on *Ex parte Young* because "there exists a significant question about it" despite "neither party [] rais[ing] the issue," and finding that: (i) standing existed and (ii) the *Young* exception applied to the relevant state officials).

The district court held that the City had standing to sue the Attorney General. We note that it's unlikely the City had standing.[3] The City fails to show how the Attorney General's past interventions in suits involving municipal ordinances demonstrate that there is "a significant possibility" that the Attorney General will inflict "future harm" by acting to enforce "the supremacy of [§ 250.007]" over the Ordinance.

### B. Texas Workforce Commission

We next consider whether the district court correctly found that the Texas Workforce Commission was subject to the *Ex parte Young* exception. The State contends that the court erred in exercising jurisdiction over the Commission because state agencies are not subject to the exception.[4]

The State is correct in its assertion that the Commission is immune to suit and not subject to the *Young* exception. State agencies are entitled to Eleventh Amendment sovereign immunity. *See Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 280–81 (5th Cir. 2002) ("The Eleventh

---

[3] Although we decline to do so today, courts in this circuit have considered standing on interlocutory appeal in the past. For example, this court has recognized that a review of standing in the context of a Rule 23(f) class certification interlocutory appeal is appropriate in some instances. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) ("Standing, however, goes to the constitutional power of a federal court to entertain an action, and *this court has the duty to determine whether standing exists even if not raised by the parties*.") (emphasis added). The court also considered standing in an interlocutory appeal of a district court's Eleventh Amendment sovereign immunity determination in an unpublished case, *Walker v. Livingston*, 381 F. App'x 477 (5th Cir. 2010) (per curiam). *Walker* involved a 42 U.S.C. § 1983 wrongful death claim for damages where defendants brought an interlocutory appeal on Eleventh Amendment grounds after the district court denied their motion for summary judgment. *Id.* at 478. There, this court held that although "*Ex parte Young* allows, under certain circumstances, the plaintiff to seek injunctive relief . . . it is clear that the plaintiffs lack standing to assert claims for injunctive or declaratory relief." *Id.*

[4] The State also argues that the City has waived its *Young* arguments with respect to the Texas Workforce Commission because it did not discuss the applicability of the exception to the Commission in its brief. To the extent it matters, we agree. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (holding that one "abandon[s] [one's] arguments by failing to argue them in the body of [one's] brief"); *see also United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts . . . . When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." (citation omitted)). We have held that, "[the] TWC is an agency of the State of Texas and therefore all claims brought against it are barred by the Eleventh Amendment." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (per curiam). Texas law also confirms that the Commission is a state agency. Texas Local Government Code § 325.002 defines "[s]tate agency" as an entity expressly made subject to Chapter 325. TEX. LOC. GOV'T CODE § 325.002. And the Texas Labor Code states that, "[t]he Texas Workforce Commission is subject to Chapter 325, Government Code (Texas Sunset Act)." TEX. LAB. CODE § 301.008; *see U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 502 (5th Cir. 2018) (finding that the Railroad Commission of Texas is a state agency because it is subject to Chapter 325).

However, "the Eleventh Amendment does not bar suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj*, 714 F.3d at 328 (citing *Young*, 209 U.S. at 155–56). But in order "[t]o fall within the *Ex parte Young* exception to sovereign immunity . . . a plaintiff must name individual state officials as defendants in their official capacities." *Id.* (finding that although plaintiff had asserted claims for injunctive and declaratory relief, he could not utilize the *Young* exception to sovereign immunity because he named only state entities, and not their individual officers, as defendants). Here, the City clearly named only the "Texas Workforce Commission," a state agency immune to suit, and did not name any individual commissioners. Thus, the City's suit against the Commission is barred by sovereign immunity.

No. 18-50646

IV.

For the foregoing reasons, we hold that the district court was incorrect in finding that the City's suit against Attorney General Paxton and the Texas Workforce Commission could proceed pursuant to the *Ex parte Young* exception to sovereign immunity. We REVERSE and REMAND to the district court with instructions to dismiss for lack of jurisdiction.