# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2021

Lyle W. Cayce
Clerk

———————

No. 20-40337

———————

DAVID ALLEN HAVERKAMP, ALSO KNOWN AS BOBBIE LEE
HAVERKAMP,

*Plaintiff—Appellee*,

*versus*

DOCTOR LANNETTE LINTHICUM; CYNTHIA JUMPER; F. PARKER
HUDSON; PHILLIP KEISER,

*Defendants—Appellants*,

CONSOLIDATED WITH

————————

No. 20-40683

————————

DAVID ALLEN HAVERKAMP, ALSO KNOWN AS BOBBIE LEE
HAVERKAMP,

*Plaintiff—Appellee*,

*versus*

PRESTON JOHNSON, JR.; JOHN BURRUSS; ERIN WYRICK;
JEFFREY BEESON; DEE BUDGEWATER; ROBERT GREENBERG,

*Defendants—Appellants*.

No. 20-40337
c/w No. 20-40683

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:17-CV-18

Before DENNIS and ENGELHARDT, *Circuit Judges*, and HICKS, *Chief District Judge*[*]

PER CURIAM:

Texas state prisoner David Allen Haverkamp, also known as Bobbie Lee Haverkamp, a biological male at birth who identifies as a transgender woman, sued state officials (collectively, "Defendants" or "the State"), alleging violations of the Equal Protection Clause of the United States Constitution. Specifically, Plaintiff alleges that Defendants violated equal protection by denying Plaintiff medically necessary sex-reassignment surgery and by failing to provide certain female commissary items and a long-hair pass. The district court denied the State's motions to dismiss, concluding that the State was not entitled to sovereign immunity and that Haverkamp pled a plausible equal protection claim. The State appeals the denial of sovereign immunity. For the reasons below, we VACATE and REMAND.

## I.

## A.

We begin with a brief overview of the structure of Texas's health care system for prisoners. The Texas Department of Criminal Justice ("TDCJ") contracts with the University of Texas Medical Branch ("UTMB") to provide medical and psychiatric services to inmates, including Plaintiff. The general policies that govern medical care for TDCJ inmates are promulgated by Texas's Correctional Managed Healthcare Committee ("the Committee"), a statutorily created arm of the State. TEX. GOV'T CODE

---

[*] Chief Judge of the Western District of Louisiana, sitting by designation.

No. 20-40337
c/w No. 20-40683

§ 501.148(a)(1). By statute, the Committee is composed of private physicians appointed by the governor; an employee of TDCJ; physicians employed by, *inter alia*, UTMB; and physicians employed by other medical schools. *Id.* § 501.133. Defendants in both appeals are all members of the Committee. Defendant Dr. Lannette Linthicum, in addition to being a Committee member, currently serves as Director of TDCJ's Health Services Division.

The Committee is tasked with "develop[ing] and approv[ing] a managed health plan" that "specifies the types and general level of care" for inmates and "ensures continued access to needed care in the correctional health care system." *Id.* § 501.146(a). The Committee is also charged with furnishing "advice," "providing medical expertise," and "assisting" TDCJ in implementing its statewide health policies. *Id.* § 501.148(b). In addition, the Committee has the statutory responsibility to resolve disputes between TDCJ and "health care providers" or "contracting entities" in the "event of a disagreement relating to inmate healthcare services." *Id.* § 501.148(a)(2).

**B.**

Haverkamp, who identifies as a transgender woman, is incarcerated by TDCJ in a men's prison in Beaumont, Texas.[1] In 2017, Haverkamp filed a *pro se* suit in federal court alleging that physicians who worked with and for TDCJ violated the Eighth and Fourteenth Amendments by refusing to provide Plaintiff with sex-reassignment surgery. Haverkamp named as defendants Dr. Joseph Penn, who is no longer party to the case, and Linthicum, an appellant in case number 20-40337. Plaintiff sought an

---

[1] Haverkamp was convicted of two counts of aggravated sexual assault in 1994 and sentenced to 45 years in prison. *See Haferkamp* [sic] *v. State*, No.19-94-00829-CR, 1996 WL 283902, at *1 (Tex. App.—Houston [14th Dist.] May 30, 1996, no writ).

injunction ordering the defendants to provide Plaintiff with sex-reassignment surgery and a declaratory judgment affirming Plaintiff's right to necessary treatment and care.

The magistrate judge held a hearing with the parties and "raised the issue as to whether the proper defendants have been named in this case." Counsel for Texas stated that "the appropriate defendants in this case hinge on the type of relief sought" by Haverkamp. Counsel explained that "(1) in the event Plaintiff only seeks gender reassignment surgery, the appropriate defendant would be Dr. Owen Murray from . . . UTMB[]; and (2) if Plaintiff seeks a policy change or a new policy regarding care for transgender inmates, the appropriate defendants would be the principal members of the Correctional Managed Health Care . . . committee." Texas stated it would file an advisory with the court with the names of the Committee members.

Based on the State's representations, the magistrate judge ordered Haverkamp to file an amended complaint and proposed that Haverkamp "name Dr. Murray and each of the CMHC principal committee members in their official capacities as Plaintiff only seeks injunctive relief in this case." The court permitted Plaintiff to name defendants as John and Jane Doe and explained that it would be able to ascertain the identities of the precise parties once the State filed its advisory.

In October 2017, Haverkamp filed a handwritten *pro se* amended complaint (the operative complaint). According to the operative complaint, Haverkamp was diagnosed with gender dysphoria in 2013, a condition which "[t]he American Psychiatric Association defines . . . in its most recent *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) as a 'marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months duration[.]'" *Gibson v. Collier*, 920 F.3d 212, 217 (5th Cir. 2019). In October 2014, Haverkamp's physician, Dr. Walter

No. 20-40337
c/w No. 20-40683

Meyer, prescribed a 12-month course of hormone therapy consisting of the hormone estradiol and a referral at the end of that period for sex-reassignment surgery. During this appointment, Dr. Meyer "confirmed" that gender reassignment surgery was available to Haverkamp. Several days later, Haverkamp requested the surgery "at the earliest possible time."

Three months into the 12-month hormone regimen, Dr. Meyer told Haverkamp that UTMB, which provides medical care to TDCJ inmates, "is going to have to face the inevitable that gender reassignment surgery is going to happen." (capitalization altered). In September 2015, near the end of the year-long course of hormone treatment, Haverkamp met with Dr. Meyer and a nurse and "was told very plainly that TDCJ would not pay for surgery."

The operative complaint names John and Jane Doe as defendants and asserts several claims under the Equal Protection Clause, all of which center on the argument that Haverkamp is similarly situated to cisgendered female prisoners and that the State violates equal protection by treating Haverkamp in a dissimilar manner. In particular, the operative complaint alleges that the State continues to deny Haverkamp adequate treatment, including sex-reassignment surgery, while the State provides adequate care, including medically necessary vaginoplasty to cisgendered women with serious medical needs, including medically necessary vaginoplasty. The amended complaint also claims, *inter alia*, that the State must provide Haverkamp with a pass to grow long hair and access to the same kinds of clothing, cosmetics, and hygiene items available to cisgendered female inmates.

The operative complaint references and attaches Policy G-51.11, a policy promulgated by the Committee concerning the treatment of gender disorders.[2] Haverkamp alleges that Policy G-51.11 constitutes a contract

_____

[2] Policy G-51.11 states in pertinent part:

No. 20-40337
c/w No. 20-40683

guaranteeing the right to sex-reassignment surgery and that defendants have breached this contract.  Haverkamp also appears to allege that because the Policy references a publication by the World Professional Association of Transgender Health on the standards for care of transgender persons, the State must comply with those standards.  The operative complaint does not assert the Eighth Amendment claim asserted in Haverkamp's original pleading, which, in any event, the *Gibson* panel later foreclosed.  920 F.3d at 215-16.

In March 2018, Texas filed an advisory listing the ten principal members of the Committee, including Linthicum (who was named in the

---

III.    When a diagnosis of Gender Identity Disorder is made –

    A.  Mental health counseling will be offered.

    B.  Current, accepted standards of care and the offenders physical and mental health will determine if advancement of therapy is indicated.

        1.  If hormone therapy is indicated, hormone therapy will be requested through the non-formulary process. Documentation of patient education and written consent are required prior to submission of the non-formulary request. . . .

        2.  If hormone therapy is prescribed, the offender will be followed in chronic care clinic with regular assessments for complications of hormone therapy (e.g. hypertension, liver disease, heart disease, breast cancer, etc.).

IV.    The University Directors of Mental Health Services and University Regional or Senior Medical Directors will be the approving authorities for treatment plans and hormone therapy related to GID.

V.    Facility medical staff will assure the facility warden and TDCJ Health Services Liaison are immediately notified of all offenders alleging or presenting with signs or symptoms of a gender disorder.

6

No. 20-40337
c/w No. 20-40683

original complaint), Dr. Cynthia Jumper, Dr. F. Parker Hudson, (collectively, the "Appellants in case number 20-40337"), and several other individuals no longer party to either appeal. Based on the State's advisory, the district court ordered service of Haverkamp's operative complaint on Dr. Murray, whom the State earlier identified as the proper defendant if Haverkamp were seeking sex-reassignment surgery, and the nine Committee members who had not yet been named as parties.

Subsequently, several of the Committee members filed a motion to dismiss.[3] These Committee members, who are the Appellants in case number 20-40337, contended that Haverkamp's action was barred by Eleventh Amendment sovereign immunity, and, alternatively, that Haverkamp had failed to state a plausible equal protection claim. The district court denied the State's motion to dismiss without addressing the sovereign immunity defense. Based on the operative complaint's allegations, the court determined that Haverkamp is "similarly situated to cis-gendered female inmates" because Haverkamp has "undergo[ne] gender transition, including chemical castration." The district court further held that Haverkamp stated a plausible claim that defendants denied Plaintiff equal protection when they refused Haverkamp's surgery request. Last, the court chose to exercise supplemental jurisdiction over Haverkamp's state-law contract claim.[4] On

---

[3] The Committee members who filed the motion are Linthicum, who, in addition to her role on the Committee, is the Director of TDCJ's Health Services Division, and Jumper, Hudson, Keiser.

[4] Shortly thereafter, the State filed a notice to substitute parties under Federal Rule of Civil Procedure 25(d) seeking to substitute out several individuals, including Dr. Murray, who had been added as defendants but were no longer members of the Committee, and replace them with individuals who had taken their place on the Committee, including Dr. Philip Keiser, Appellant in 20-40337, and Preston Johnson, Jr., John Burruss, Erin Wyrick, Jeffrey Beeson, and Dee Budgewater, Appellants in 20-40683.[4] The court granted the motion. It later noted, however, that, with respect to Dr. Murray of UTMB, whom the

No. 20-40337
c/w No. 20-40683

May 4, 2020, the Committee members whose motion to dismiss was denied filed an interlocutory appeal challenging the denial of their claim to sovereign immunity (case number 20-40337).

Later that month, other Committee members filed a motion to dismiss, contending that (1) Haverkamp lacked standing because they could not redress Haverkamp's alleged injuries; (2) the suit was barred by sovereign immunity; and (3) the suit failed to allege a plausible equal protection claim.[5]  The district court denied the motion.  First, the court reasoned that Haverkamp plausibly alleged that Committee members directly impacted Haverkamp's treatment plan and that the State had "provided vague and sometimes conflicting guidance as to the identity of the proper defendants."  Second, the court held that Haverkamp's claim met the requirements of the *Ex Parte Young* exception to sovereign immunity.  209 U.S. 123 (1908).  Last, the court held that Haverkamp stated an equal protection claim for the reasons provided in its earlier order.  In October 2020, this latter group of Committee members appealed the denial of sovereign immunity (case number 20-40683).[6]  We consolidated the two appeals.

---

State had earlier identified as the appropriate defendant if Haverkamp sought sex-reassignment surgery, it was "unclear whether any one of the" new Committee member defendants "assumed [his] role on the [Committee] or has any current connection with UTMB."  The court also dismissed Dr. Penn, whom Haverkamp had originally named as a defendant.

[5] Defendants Johnson, Burrus, Wyrick, Beeson, and Budgewater filed the motion. They were joined by then-defendant Burrow.

[6] These defendants are Johnson, Burrus, Wyrick, Beeson, and Robert Greenberg.

No. 20-40337
c/w No. 20-40683

## II.

"We review the district court's jurisdictional determination of sovereign immunity de novo." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), *cert. denied* 141 S. Ct. 1047 (2021). "The burden of proof for a [Federal] Rule [of Civil Procedure] 12(b)(1) motion to dismiss is on the party asserting jurisdiction," and, at the pleading stage, the plaintiff's "'burden is to allege a plausible set of facts establishing jurisdiction.'" *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)). On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor. *See id.* at 271-72.

## III.

Texas argues that Haverkamp's suit is barred by sovereign immunity because (1) the Committee members are not proper defendants under *Ex Parte Young*, as Haverkamp fails to allege they have the requisite connection to enforcing the policies Haverkamp challenges; (2) federal courts cannot enjoin state officials to undertake the affirmative; discretionary acts that would be required to provide the relief Haverkamp seeks, and (3) the doctrine set forth in *Pennhurst State School and Hospital v. Halderman*, 456 U.S. 89 (1984), bars Haverkamp's claims to the extent Haverkamp asserts that Defendants are violating state law. Texas also contends that Haverkamp lacks Article III standing. We conclude that Haverkamp's operative complaint fails to plausibly allege that Defendants are sufficiently connected to enforcing any policies or decisions Haverkamp challenges as unconstitutional. We decline as unnecessary to reach the State's other arguments.

No. 20-40337
c/w No. 20-40683

### A.

The denial of Eleventh Amendment sovereign immunity, though interlocutory, is immediately appealable under the collateral order doctrine. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993). Sovereign immunity bars private suits against nonconsenting states in federal court. *Id.* This bar applies not only to states but also to suits against state actors in their official capacities that are effectively suits against a state. *Id.* The Supreme Court, however, carved out an exception to state sovereign immunity in *Ex parte Young*, 209 U.S. at 159-60, permitting suits against state actors whose conduct violates federal law. "The rule is based on the legal fiction that a sovereign state cannot act unconstitutionally," and therefore, when "a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).

In this case, "[i]t is undisputed that Texas has not consented to this suit and that Congress has not abrogated the State's immunity. The question, then, is whether the defendants are subject to suit under the *Ex parte Young* exception." *City of Austin*, 943 F.3d at 998. For a plaintiff to properly invoke *Ex parte Young*, the state official sued must have "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Young*, 209 U.S. at 157. In other words, "[t]here are plenty of state actors. A plaintiff must show that the defendant state actors have the requisite 'connection' to the statutory scheme to remove the Eleventh Amendment barrier to suits brought in federal court against the State." *K.P.*, 627 F.3d at 124 (internal quotation marks omitted).

No. 20-40337
c/w No. 20-40683

Moreover, whether a suit may proceed under *Ex Parte Young* does "not require an analysis of the merits of the claim. Rather, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* at 998 (cleaned up) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011)).

## B.

"In conducting our *Ex parte Young* analysis, we first consider whether the plaintiff has named the proper . . . defendants." *City of Austin*, 943 F.3d at 998. To be amenable to suit under the doctrine, the state actor must both possess "the authority to enforce the challenged law" and have a "'sufficient connection [to] the enforcement' of the challenged act." *Id.* (alterations in original) (quoting *Ex parte Young*, 209 U.S. at 157).

First, the State argues that, to the extent Haverkamp challenges the content of the policy, Defendants' role in formulating and promulgating the policy does not subject them to suit under *Ex parte Young*. As this court has explained, a governor's promulgation of an executive order alone is not sufficient to make him suable under *Ex parte Young* because the "statutory authority . . . to issue, amend, or rescind an Executive order is not the power to enforce." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 477 (5th Cir. 2020) (internal quotation marks omitted). Likewise, the Committee's authority to promulgate Policy G-51.11, standing alone, is not the power to enforce that policy.

Second, the State contends that Defendants lack the particular duty to enforce Policy G-51.11. Plaintiff disagrees, pointing out that the operative complaint alleges a dispute between Plaintiff's physician and TDCJ with respect to providing sex-reassignment surgery. Given the Committee's statutory authority to "serve as a dispute resolution forum in the event of a

11

disagreement" between TDCJ and health care providers concerning "inmate health care services," Tex. Gov't Code § 501.141(a)(2), Haverkamp asserts it is "entirely plausible" that the Committee sided with TDCJ to reject Haverkamp's physician's referral for sex-reassignment surgery. But the operative complaint merely alleges that Haverkamp's treating physician, Dr. Meyer, told Haverkamp during the course of the hormone therapy that TDCJ "is going to have to face the inevitable that gender reassignment surgery is going to happen" and that several months later, during a meeting with Dr. Meyer and a nurse, Haverkamp "was told very plainly that TDCJ would not pay for surgery."

While these circumstances do suggest a disagreement between Dr. Meyer and TDCJ concerning the provision of sex-reassignment surgery— even though there is no clear allegation that Dr. Meyer continued to recommend sex-reassignment surgery at the end of the year-long course of hormone therapy—the amended complaint does not allege (1) which TDCJ official, if any, decided that TDCJ would not pay for surgery; (2) whether Dr. Meyer (or anyone else) challenged that decision and brought it before the Committee; or (3) that the Committee adjudicated any dispute between TDCJ and Haverkamp's health care provider concerning sex-reassignment or rendered a decision that aggrieved Haverkamp, perhaps by enforcing Policy G-51.11 so as to deny surgery. Haverkamp has thus failed, at this point, to plausibly allege that the Committee members enforced any policy or were involved in enforcing any decision that Haverkamp challenges. *See Laufer*, 996 F.3d at 271-72.

Similarly, although the amended complaint states that Defendants will not "honor[]" Dr. Meyer's recommendation to permit Haverkamp to have long-hair passes and wear feminine articles of clothing, there is no allegation that there was ever a dispute between Dr. Meyer and TDCJ

regarding these issues that the Committee adjudicated.  Therefore, even though these items and privileges may be part of the treatment of gender dysphoria, it is not plausible based on the facts pleaded that the Committee has any connection to the enforcement of a policy that contributed to or resulted in Haverkamp being denied these items and privileges.  *See Laufer*, 996 F.3d at 271-72.

Haverkamp asserts that, at the very least, it is plausible that Linthicum, in her capacity as TDCJ's Director of Health Services, is responsible for the decisions to deny sex-reassignment surgery, the long-hair pass, and female commissary items.  Texas responds that it is uncertain in what capacity Linthicum appears in this case because the original complaint named Linthicum as a defendant in her role as an employee of UTMB, although she was and remains a TDCJ employee.  Ultimately, however, this point is immaterial because, assuming Linthicum is joined in her capacity as the head of Health Services for TDCJ, the operative complaint contains no allegation plausibly linking Linthicum with the challenged decisions.  Put simply, in a system with approximately 130,000 inmates in custody,[7] and absent any allegations tying Linthicum to the specific decisions at issue, it cannot be plausibly inferred that Linthicum played any role in the decisions Haverkamp challenges as unconstitutional.  *See Laufer*, 996 F.3d at 271-72.

Last, Haverkamp appears to suggest that it is inequitable for Texas to assert that these Defendants are entitled to sovereign immunity when the State has not identified any other person or entity that would have responsibility for enforcing Policy G-51.11 or actually made the decision to deny surgery.  This argument is ultimately unavailing because "[t]he burden

---

[7] Tex. Dep't of Crim. Just., 2019 Statistical Report (2019), https://www.tdcj.texas.gov/documents/Statistical_Report_FY2019.pdf.

No. 20-40337
c/w No. 20-40683

of proof . . . is on the party asserting jurisdiction[.]" *Id.* at 271. Texas has identified the parties Haverkamp should sue, but it remains Haverkamp's burden to plead these parties' connection to the enforcement of the decisions Haverkamp challenges.[8]

Because we conclude that Haverkamp's operative complaint does not adequately plead that Defendants have a "sufficient connection [to] the enforcement of the challenged act," we must vacate the district court's orders denying the State's sovereign immunity defense. *City of Austin*, 943 F.3d at 998 (internal quotation marks omitted). We need not and do not

---

[8] Plaintiff contends that we should apply judicial estoppel to preclude Texas from now asserting that Plaintiff has sued the wrong defendants after the State expressly advised the district court as to whom Plaintiff needed to sue depending on the relief sought. "Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quotation marks omitted). Two elements "must be satisfied before a party can be estopped. First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and second, that party must have convinced the court to accept that previous position." *Id.* (cleaned up). We note that we have previously stated that "'principles of estoppel do not apply' to issues of subject matter jurisdiction." *Republic of Ecuador v. Connor*, 708 F.3d 651, 655 (5th Cir. 2013) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982)); *cf. Lara v. Trominski*, 216 F.3d 487, 495 (5th Cir. 2000) ("We are especially wary of applying judicial estoppel to create subject matter jurisdiction in the federal courts." (citing *Lydon v. Boston Sand & Gravel Co.,* 175 F.3d 6, 14 (1st Cir. 1999) ("[C]ourts have been cautioned to give careful consideration to the application of judicial estoppel when subject matter jurisdiction is at stake.")); *In re Sw. Bell Tel. Co.,* 535 F.2d 859, 861 (5th Cir. 1976), *rev'd on other grounds sub nom. Gravitt v. Sw. Bell Tel. Co.,* 430 U.S. 723 (1977)). Even assuming the doctrine does apply to issues of subject matter jurisdiction, its requirements are not satisfied here. Although Texas did identify Defendants as the proper parties to sue if Haverkamp seeks to change Policy G-51.11 or to receive surgery, this is different from representing that the allegations in Haverkamp's operative complaint sufficiently allege that Defendants enforced the policy such that the *Ex Parte Young* doctrine can be properly invoked in order to overcome sovereign immunity. In other words, Texas's position in the district court is not "clearly inconsistent" with its argument on appeal. *Hall*, 327 F.3d at 396. Accordingly, Haverkamp's judicial estoppel argument fails.

No. 20-40337
c/w No. 20-40683

reach the State's other contentions respecting sovereign immunity. In light of the State's representations to the district court that these Defendants are the proper state officials to sue, we do not, at this stage, dismiss Defendants from the case.

## IV.

For these reasons, we VACATE the district court's orders denying sovereign immunity and REMAND for further proceedings consistent with this opinion.[9]

---

[9] All pending motions are denied as moot.

No. 20-40337
c/w No. 20-40683

JAMES L. DENNIS, *Circuit Judge*, specially concurring:

I write briefly to offer two additional points. First, on remand, the district court should consider granting leave to amend. Earlier in this litigation, the State affirmatively represented to the district court that the Defendants here are the proper ones for Plaintiff Bobbie Lee Haverkamp to sue. Thus, the defect in Haverkamp's pleading that results in today's judgment—her operative complaint's failure to sufficiently connect these Defendants with the enforcement of any assertedly unconstitutional polices or decisions—could potentially be cured if she were permitted to re-plead. Under these circumstances, the district court may conclude that "justice so requires" that Haverkamp be granted leave to file a second amended complaint. FED. R. CIV. P. 15(a)(2).

Second, the conscientious district court may wish to reconsider its previous orders denying Haverkamp's requests for appointment of counsel. In those orders, the district court took care to note that it would *sua sponte* reexamine its decision as the case proceeds. Upon reassessing whether appointment of counsel is warranted, the court should, just as it did before, "make specific findings on each o[f] the *Ulmer* [*v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)] factors." *Williams v. Catoe*, 946 F.3d 278, 279 n.1 (5th Cir. 2020) (en banc) (quoting *Jackson v. Dall. Police Dep't*, 811 F.2d 20, 262 (5th Cir. 1986)). Without presuming to dictate to the district court what its decision should be, I observe that, given the apparent complexity of this case, it would be wholly reasonable for the court to conclude that appointment of counsel "would advance the proper administration of justice." *Ulmer*, 691 F.2d at 213.

With these additional observations, I respectfully concur.

16