# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 18, 2021

Lyle W. Cayce
Clerk

No. 20-40379

Dennis Wayne Hope,

*Plaintiff—Appellant*,

*versus*

Todd Harris; Chad Rehse; Leonard Eschessa; Joni White; Kelly Enloe; Melissa Benet; B. Fiveash,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:18-CV-27

Before King, Smith, and Haynes, *Circuit Judges*.

Per Curiam:*

In this case, a prisoner, proceeding pro se, filed an action under 42 U.S.C. § 1983, challenging, *inter alia*, various aspects of his imprisonment in solitary confinement under the Fourteenth, First, and Eighth Amendments of the U.S. Constitution. The district court, adopting the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

magistrate judge's report and recommendation, dismissed all claims with prejudice. Now, with counsel, the prisoner appeals. For the reasons that follow, we AFFIRM in part, VACATE in part, and REMAND for further proceedings.

## I.

Plaintiff-appellant Dennis Wayne Hope is a prisoner in solitary confinement in the Security Housing Unit at the Polunsky Unit within the Texas Department of Criminal Justice. Hope alleges that he has been continuously held in solitary confinement in a cell "no larger than a parking space" twenty-three to twenty-four hours a day for over two decades. According to Hope, he has been told that because he escaped from prison in 1994, he will remain in solitary confinement, even though he alleges that his "escape risk" designation was removed in 2005. He claims that the committee meetings that review his ongoing solitary confinement are a "sham." Moreover, Hope has alleged that since he filed a grievance about various conditions, he has been moved between cells over 263 times and has had his typewriter confiscated. Finally, Hope claims, *inter alia*, that the decades of solitary confinement in a cell that sometimes has feces, urine, and black mold on the walls, floor, and doors have led to his physical and psychological deterioration.

Hope, originally proceeding pro se, filed this lawsuit against seven prison officials: Senior Warden Todd Harris, Major Chad Rehse, Deputy Director of Support Operations Leonard Eschessa, Assistant Director of Classifications Joni White, and three state classification committee members, Kelly Enloe, Melissa Benet, and Bonnie Fiveash (collectively, "Defendants"). Specifically, Hope brought a procedural due process claim under the Fourteenth Amendment and a retaliation claim under the First Amendment. He also brought an Eighth Amendment claim, alleging that the

No. 20-40379

conditions, including the duration, of his solitary confinement constitute cruel and unusual punishment. A magistrate judge recommended that Hope's complaint be dismissed for lack of standing but then proceeded to analyze the merits of Hope's claims, recommending that they be dismissed with prejudice. The district court, after a de novo review, overruled Hope's objections, adopted the magistrate judge's report and recommendation, and dismissed Hope's complaint with prejudice. Hope timely appealed with counsel.[1]

## II.

We review a dismissal for lack of subject-matter jurisdiction de novo. *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 599 (5th Cir. 2016). The jurisdictional questions presented here are two-fold: (1) whether Hope has standing to bring this action and (2) whether state sovereign immunity bars this action. Important, too, to this jurisdictional inquiry is the fact that Hope brought both official-capacity and individual-capacity claims. We discuss each in turn.

### A. There is subject-matter jurisdiction over Hope's official-capacity claims.

Hope is a prisoner challenging the conditions of his confinement, and his classification within the prison system in an action against various prison officials. This is the prototypical mix of defendants in such cases. *Cf. Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (dismissing the Governor from a prisoner's action for, *inter alia*, Eighth Amendment violations on the basis of sovereign immunity but not dismissing the named prison official).

---

[1] Four amicus briefs focusing on the effects of long-term solitary confinement were also filed in support of Hope.

No. 20-40379

Against that backdrop, we first look to whether Hope has established standing as to each of his claims.

Generally, a plaintiff has standing to sue under Article III if he can show (1) an injury-in-fact, concrete and particularized, that is (2) fairly traceable to the defendant's challenged action, and (3) redressable by a favorable outcome. *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013)).

Liberally construing Hope's pro se complaint, as we must, *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995), he alleges three claims.[2] Specifically, Hope alleges a procedural due process claim under the Fourteenth Amendment against all Defendants and a retaliation claim under the First Amendment against Defendants Warden Harris and Major Rehse. He also brings an Eighth Amendment claim against all Defendants for cruel and unusual punishment.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)) (alterations in original). And "when the suit is one challenging the legality of government action or inaction," of which the prisoner is the object, then "there is ordinarily little question . . . that a judgment preventing or requiring the action will redress it." *Id.* at 561–62.

---

[2] Although Hope is represented by counsel on appeal, he proceeded pro se in the district court.

Here, Hope has offered numerous factual allegations supporting each of his claims. For example, regarding Hope's procedural due process claim, Hope alleges that he is denied meaningful reviews to determine if he should be removed from solitary confinement and that the hearings that are held regarding his classification are a "sham." Specifically, Hope alleges that each of the Defendants has contributed to the denial of a meaningful review and due process by, *inter alia*, not discussing matters related to his file and failing to follow the classification policies and "fair procedures." To that end, Hope has alleged that his denial of procedural due process is fairly traceable to each of the Defendants, and his requested relief would redress this injury by, for example, ordering Defendants to afford Hope the process he claims that he is due. *See id.*

As to the retaliation claim, Hope has also alleged an injury-in-fact. Namely, he alleges that after filing a grievance, he suffered various retaliatory acts such as being moved to over 263 different cells and having his typewriter confiscated. He alleges that Defendants Warden Harris and Major Rehse have ordered these moves, which suffices at the pleading stage as a factual allegation that the injury resulted from Defendants' conduct. *Id.* at 560. And at this stage in the proceedings, his requested relief would redress this injury by, for example, enjoining the frequent cell moves. *See id* at 561–62 (explaining that where a plaintiff is the "object of the action (or forgone action) at issue," then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it").

Finally, as to his Eighth Amendment claim, Hope has alleged that he has suffered "physical and psychological mal[a]dies due to the inhumane treatment and conditions" and has been denied "basic needs." He goes on to allege that "[e]ach of the Defendants in one capacity or another work together to ensure Mr. Hope continues to be subjected to these inhumane

conditions and have done so for a prolonged period of time." As such, Hope has alleged an injury-in-fact—his physical and psychological maladies—that is fairly traceable to Defendants in light of their roles in maintaining those conditions and Hope's confinement in those conditions. *See id.* at 560–61. Finally, Hope's requested relief is that he not be subjected to these "inhumane conditions," and so, because Hope is the object of the Defendants' continuation of these conditions, a judgment enjoining such actions would redress the alleged harm. *See id.* at 561–62.

For these reasons, contrary to the magistrate judge's conclusion, Hope has standing to bring this action.[3]

We must also assure ourselves that this suit clears a second jurisdictional bar—state sovereign immunity. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002) (noting that state sovereign immunity "bears on [the] court's subject-matter jurisdiction"). State sovereign immunity prohibits "private suits against nonconsenting states in federal court." *See City of Austin*, 943 F.3d at 997; *see also Hans v. Louisiana*, 134 U.S. 1, 13 (1890). And where a suit is effectively against the state, the

---

[3] The magistrate judge concluded that Hope lacked standing to bring this action because his claims were not redressable by Defendants. Specifically, the magistrate judge found that Hope's claims were not redressable because some of Defendants had left Hope's prison unit and that only the "Director" of the prison system, who was not named among Defendants and whom the magistrate judge did not offer any details about, could redress Hope's injuries. But this was an error. First, Hope brought, *inter alia*, official-capacity claims against Defendants, allowing the officials' successors to be automatically substituted, so it is of no moment that some of the Defendants have left Hope's unit. *Ganther v. Ingle*, 75 F.3d 207, 210 & n.7 (5th Cir. 1996); *see also* Fed. R. App. P. 43(c)(2) ("The public officer's successor is automatically substituted as a party."). Second, the magistrate judge's conclusion appears to rest on an assumption that the only way to redress Hope's injuries was releasing him from solitary confinement. But Hope's requested relief is not so limited. Indeed, Hope also requests that he not be subjected to certain conditions of confinement as well as receive additional process.

No. 20-40379

state officials enjoy the same sovereign immunity that would be afforded the state. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021); *City of Austin*, 943 F.3d at 997. In the absence of abrogation by Congress, waiver by the state, or application of an exception, state sovereign immunity bars suit. *Tex. Democratic Party*, 978 F.3d at 179.

Relevant here is the exception under *Ex parte Young*, 209 U.S. 123 (1908), which permits suits for prospective injunctive or declaratory relief against a state official acting in violation of federal law if there is a sufficient connection to enforcing the allegedly unconstitutional law. *See id.* We have made clear that enforcement means "compulsion" or "constraint" and that a plaintiff must at least show that the defendant has a particular duty to enforce the challenged conduct. *Id.*; *see also Tex. Democratic Party v. Hughs*, No. 20-50683, 2021 WL 1826760, at *2 (5th Cir. May 7, 2021). And we note that generally "all institutional litigation involving state prisons," such as this case, is brought under the *Ex parte Young* exception. *Brennan v. Stewart*, 834 F.2d 1248, 1252 n.6 (5th Cir. 1988). In fact, "[t]he exception is so well established [in that context] that" such cases often do not even "mention[] . . . *Ex parte Young*." *Id.*; *see also Kahey v. Jones*, 836 F.2d 948, 949 (5th Cir. 1988) ("To the extent her complaint [against the Warden] thus seeks prospective injunctive relief against the state, it does not contravene the eleventh amendment."). Finally, although analytically distinct questions, there is "significant[] overlap" between the Article III standing and the *Ex parte Young* inquiries. *See City of Austin*, 943 F.3d at 1002 (quoting *Air Evac EMS, Inc. v. Tex., Dep't of Ins. Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). And we note, too, that the standing inquiry can inform the state sovereign immunity inquiry. *See id.*

Against that backdrop, each of the Defendants whom Hope named and seeks prospective injunctive relief against has the authority to compel or constrain Hope's conditions of confinement by maintaining those conditions

and his placement within them.[4] *See, e.g.*, *Kahey*, 836 F.2d at 949 (noting that complaints against the prison warden do not contravene state sovereign immunity); *City of Austin*, 943 F.3d at 1001 (discussing a case where board members had the requisite authority for purposes of *Ex parte Young* because the board had the authority to decide whether to pay certain claims); *see also Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (explaining that under Tex. Gov't Code 501.063(b) the Texas Department of Criminal Justice is responsible for enforcing the challenged statutory provision). Therefore,

---

[4] First, Hope named Todd Harris, the Senior Warden, and in similar prison litigation, the warden is almost invariably named as a defendant. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 830 (1994) (naming the warden of the prison where the prisoner was housed). And it stands to reason that the prison warden would have a sufficient connection to enforcing the allegedly unconstitutional prison conditions by compelling or constraining certain practices. *See Tex. Democratic Party*, 978 F.3d at 179; *see also Kahey*, 836 F.2d at 949. Second, Hope named Major Chad Rehse, whose duties include overseeing the conditions of confinement and treatment of inmates in solitary confinement. Such duties satisfy the required connection to the challenged conduct because Major Rehse can compel or constrain certain challenged conditions of confinement. *See City of Austin*, 943 F.3d at 1001; *see also Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 552 (5th Cir. 1997) (explaining that "[e]ach prison unit organizes the line of authority over its security personnel after a military chain of command: wardens, assistant wardens, majors, captains, lieutenants, sergeants, and correctional officers, in descending hierarchical order"). The same is true of Deputy Director of Support Operations Leonard Eschessa whose duties include managing the overall treatment, conditions of confinement, and classifications of inmates. *See Tex. Dep't of Crim. Just. v. Terrell*, 925 S.W.2d 44, 47 (Tex. App.—Tyler 1995, no pet.) (describing the chain of command). Assistant Director of Classifications Joni White is responsible for "the overall classifications," again satisfying the requisite connection by being in a position to compel or constrain classification of prisoners. *See Martinez v. Stephens*, No. CV H-16-0195, 2017 WL 607129, at *4 (S.D. Tex. Feb. 15, 2017) (describing the Assistant Director's role and responsibilities). Finally, when it comes to the three state classification committee members, they all have the authority to make final decisions regarding administrative segregation, which yet again satisfies the requisite connection in that the committee members are in a position to compel or constrain classification of prisoners. *See Wilkerson v. Goodwin*, 774 F.3d 845, 850 (5th Cir. 2014) (analyzing a claim where a prisoner in solitary confinement sued various prison officials, including two classification officers).

state sovereign immunity does not bar Hope's official-capacity claims for prospective injunctive relief.

But, as the magistrate judge correctly recognized, Hope cannot seek monetary damages from Defendants in their *official* capacities. *Tex. Democratic Party*, 978 F.3d at 179; *see also Hafer v. Melo*, 502 U.S. 21, 30 (1991). The same is not necessarily so, however, for Hope's individual-capacity claims, and we turn to these next.

### B. Hope's individual-capacity claims must be considered in the first instance.

In addition to his official-capacity claims, Hope also sought damages against Defendants in their *individual* capacities, which is permitted. *See Hafer*, 502 U.S. at 30–31. Here, however, neither the magistrate judge nor the district court ever considered these individual-capacity claims before dismissing the entire complaint with prejudice. But as "we are a court of review, not of first view," we do not pass on the individual-capacity claims and instead remand to the district court to consider these claims in the first instance. *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005); *In re Ultra Petroleum Corp.*, 943 F.3d 758, 766 (5th Cir. 2019).

### III.

We review the district court's ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo. *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In exercising this review, we will not dismiss a claim

"unless the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). "We take all factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Id.* Further, where, as here, the complaint was filed pro se, we liberally construe it. *Grant*, 59 F.3d at 524.

### A. Hope has failed to state a procedural due process claim.

We turn first to Hope's procedural due process claim. And on this claim, we generally agree with the district court. To determine what process is due, we address two inquiries: "(1) whether there exists a liberty . . . interest which has been interfered with by the State and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228–29 (5th Cir. 2020) (citation omitted).

As to the first inquiry, Hope likely has established a liberty interest. That is, he has been placed in solitary confinement indefinitely, and his placement renders him ineligible for parole. *Wilkinson v. Austin*, 545 U.S. 209, 224–25 (2005); *see also Wilkerson*, 774 F.3d at 855.

Turning to the second inquiry, to determine what process is due, we look to the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires consideration of three distinct factors," namely (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Austin*, 545 U.S. at 224-25 (quoting *Eldridge*, 424 U.S. at 335).

In this case, although Hope's interest is "more than minimal," it "must be evaluated . . . within the context of the prison system and its attendant curtailment of liberties." *Id.* at 225. Put differently, we look to how much liberty Hope is deprived of over and above what would normally be incident to prison life. And so, Hope's interest is low.

From there, we turn to the risk of erroneous deprivation by considering whether Hope has "notice of the factual basis leading to consideration for [solitary] placement" and "a fair opportunity for rebuttal." *Id.* at 225–26. Where the government gives a prisoner an opportunity "to submit objections prior to the final level of review," that decreases the likelihood of erroneous deprivation. *Id.* at 226.

Here, Hope has received notice of the factual basis for his placement in solitary—his escape record. To be sure, Hope claims that his designation as an "escape risk" has been removed. But in any event, Hope concedes that the basis for his present placement in solitary remains "an incident that will never change from over 23 years ago." In so doing, Hope has alleged that he has notice.

We also find that based on the allegations before us, even viewing them in the light most favorable to Hope, Hope has had a fair opportunity for rebuttal. Indeed, according to Hope he has attended at least forty-eight hearings and has made statements during those hearings. In other words, Hope has been allowed to levy "objections prior to the final level of review," thereby decreasing the likelihood of erroneous deprivation. *Id.*

Finally, turning to the government's interest, Texas's "first obligation must be to ensure the safety of . . . the public." *Id.* at 227. Moreover, given the scarce resources of prison systems, we must "give substantial deference to prison management decisions before mandating additional expenditures for elaborate procedural safeguards." *Id.* at 228.

Based on the pleadings before us, Texas's interest in keeping the public safe from Hope, who has previously escaped, weighs in favor of finding that Hope has been given adequate process.

Put simply, even accepting Hope's allegations as true and viewing them in the light most favorable to him, the government's interest outweighs Hope's interest, and the process he is given suffices to satisfy the constitutional requirements of the Fourteenth Amendment. Therefore, we affirm the district court's dismissal of this claim.

### B. Hope has stated a claim for retaliation.

Hope also alleges that Defendants Warden Harris and Major Rehse have engaged in various forms of retaliatory conduct against him as a result of his filing grievances and having outside advocates contact officials "about his continued confinement in solitary."

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citation omitted). "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).

To show causation as part of his retaliation claim, in violation of his First Amendment rights, "a plaintiff must allege that, but for the retaliatory motive, the complained of incident would not have occurred." *Gonzales v. Gross*, 779 F. App'x 227, 230 (5th Cir. 2019) (citation and alterations omitted). That is, a prisoner must either (1) "produce direct evidence of motivation" or (2) "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (citation omitted).

In his pleadings, Hope alleges a constitutional right under the First Amendment to file a grievance with the prison system and that after filing such a grievance (and after outside advocates contacted the prison on his behalf), his typewriter was confiscated and then, between 2012 and 2018, he was moved a total of 263 times.

Hope alleges that before he filed his grievance, for almost fourteen years, he remained in the same cell or was moved only infrequently. In other words, the alleged cell-move policy and the confiscation of his typewriter (which he used to type the grievance) only occurred *after* he filed the grievance. Such a drastic shift has been alleged with sufficient detail so as to constitute a "chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)). Plainly, Hope alleges that the retaliatory or adverse act is the excessive number of moves from cell to cell—a policy and practice he alleges is still in effect—and confiscation of his typewriter. *Cf. Petzold v. Rostollan*, 946 F.3d 242, 253–54 (5th Cir. 2019) (finding that an inference of retaliation was bolstered by the chronology of events). Accordingly, Hope has plausibly alleged a retaliation claim as to these incidents.

Second, Hope alleges that after requesting video footage of a search of his cell, he was exposed to pepper spray and "left nude in a cell [for eight days] with the pepper spray still on his body and nothing to clean it off with." But, as alleged, the constitutional violation at issue is not clear, and we do not find that Hope has alleged a retaliation claim based on this incident.

At bottom, Hope has plausibly alleged all three elements of a retaliation claim against Defendants Harris and Rehse as to the cell-move policy and typewriter confiscation, and we vacate the district court's dismissal of Hope's retaliation claim and remand for further proceedings.

*C. Hope has stated a claim for a violation of the Eighth Amendment based on certain conditions of his confinement only against Major Rehse.*[5]

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. But long-term solitary confinement is not per se cruel and unusual. *Hutto v. Finney*, 437 U.S. 678, 686 (1978) (observing that it is "perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual"). Nevertheless, "[t]here is a line where solitary confinement conditions become so severe that its use is converted from a viable prisoner disciplinary tool to cruel and unusual punishment." *Gates v. Collier*, 501 F.2d 1291, 1304 (5th Cir. 1974). With that in mind, we focus our analysis of Hope's Eighth Amendment claim on whether the conditions of Hope's confinement are sufficiently "severe." *See id.*; *Farmer*, 511 U.S. at 834.

Of course, the Constitution does not require "comfortable" prison conditions, but the conditions of confinement may not "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981); *see also Daigre*, 719 F.2d at 1312 (noting that "the eighth

---

[5] To the extent that Hope has also alleged Eighth Amendment violations for other aspects of his confinement such as his lack of the same type of access to the law library as prisoners in the general population, the type of condiments he receives with his meals, or the type of human contact he has as compared to prisoners in the general population, such claims fail as a matter of law. *See Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983) (explaining that "isolation is punitive . . . and that deprivations beyond those imposed on the general prison population is the very essence of internal prison discipline"). Similarly, to the extent that Hope has alleged an Eighth Amendment violation based on the sheer length of his confinement, this claim also fails. As the Supreme Court has explained, "the length of isolation sentences was not considered in a vacuum." *Hutto*, 437 U.S. at 685; *see also Grabowski v. Lucas*, No. 94-60177, 1994 WL 652674, at *3 (5th Cir. Nov. 11, 1994) (per curiam).

amendment forbids deprivation of the basic elements of hygiene") (citing *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971)).

To state a claim for a violation of the Eighth Amendment based on conditions of confinement, a prisoner must allege (1) that the prison conditions pose a "sufficiently serious" threat to his health, including his mental health, and (2) that prison officials acted with "deliberate indifference" to such threat. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302 (1991)).

To meet the first requirement, the prisoner must show that the conditions, either alone or in combination, constitute an "unquestioned and serious deprivation" of his "basic human needs" such as food, clothing, medical care, and safe and sanitary living conditions. *See Chapman*, 452 U.S. at 347–48; *cf. Daigre*, 719 F.2d at 1312 (rejecting an Eighth Amendment challenge where the record did not establish that the prisoner's "isolation cell is generally unsanitary" but noting that a "deprivation of the basic elements of hygiene" is forbidden). And, conditions of confinement may be aggregated to rise to the level of a constitutional violation "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson*, 501 U.S. at 304 (explaining that there may be an Eighth Amendment violation where a prisoner complained of a "low cell temperature at night combined with a failure to issue blankets"). Further, under the Eighth Amendment, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Finney*, 437 U.S. at 686.

As to the second requirement, the prisoner must show that the defendant acted with "more than mere negligence." *Farmer*, 511 U.S. at 835. To that end, the prisoner must show that those prison officials were (1) "aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists"; (2) "subjectively drew the inference that the risk existed"; and (3) "disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (citing *Farmer*, 511 U.S. at 837) (alterations omitted). More simply, the prison officials must know of, and disregard, an excessive risk to a prisoner's health or safety. *See id.* (citation omitted). Evidence that a risk was obvious or otherwise apparent may be sufficient to support an inference that the prison official was aware of the risk. *Estate of Cheney ex rel. Cheney v. Collier*, 560 F. App'x 271, 273–74 (2014) (collecting cases); *see also Valentine v. Collier*, 978 F.3d 154, 163 (5th Cir. 2020) (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

And it is on this second requirement, deliberate indifference, where much of Hope's Eighth Amendment challenge falls short. Specifically, Hope has not sufficiently pleaded deliberate indifference—with one exception discussed *supra*—because it is unclear from Hope's complaint if any of Defendants, with the exception of Major Rehse, was even aware of the conditions of which he complains. In the absence of such allegations of deliberate indifference—regardless of whether any of the complained-of conditions indeed invoke Eighth Amendment concerns—Hope has failed to state a claim. *Cleveland*, 938 F.3d at 676. Therefore, we affirm the district court's dismissal of Hope's Eighth Amendment claim as to all Defendants except Major Rehse.

That said, liberally construing Hope's complaint as we must, Hope has plausibly alleged that Major Rehse was deliberately indifferent to certain conditions of confinement, which he alleges deprived him of basic human needs such as sanitary living conditions.

First, Hope has alleged that for over two decades he has been in solitary confinement in sometimes unsanitary conditions, including urine, feces, and mold on the walls, floor, and showers, insufficient cleaning

supplies, and exposure to pepper spray and tear gas without decontamination.[6]

We have previously found that similar unsanitary conditions in a prison cell can, in certain circumstances, rise to the level of cruel and unusual punishment. *See Taylor v. Stevens*, 946 F.3d 211, 219–20 (5th Cir. 2019), *cert. granted, judgment vacated on other grounds sub nom. Taylor v. Riojas*, 141 S. Ct. 52 (2020); *Gates*, 501 F.2d at 1302; *Fussell v. Vannoy*, 584 F. App'x 270, 271 (5th Cir. 2014); *Smith v. Leonard*, 244 F. App'x 583, 584 (5th Cir. 2007). Here, among other allegations, Hope alleges that a wall was almost completely covered in black mold. According to Hope, he was in the mold-infested cell for two weeks and began coughing and was never given cleaning supplies to address the condition. This likely is sufficiently serious by itself. *See, e.g.*, *Smith*, 244 F. App'x at 584 (vacating the judgment and remanding an Eighth Amendment claim regarding a prison official's failure to remove "allegedly toxic mold" from prison); *cf. Taylor*, 946 F.3d at 219 (citation omitted) (observing that a cell "covered with crusted fecal matter, urine,

---

[6] Although Hope also challenges the types of meals he receives, including that some have made him sick, such challenges fail as a matter of law. *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (finding that allegations that a prisoner "became ill after being fed Vita-Pro—a soy-based meat substitute—simply do not rise to the level of cruel and unusual punishment"). Hope's allegations regarding the policy that he be handcuffed from behind and forced to squat down suffer a similar fate. *See Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) (finding that "a policy requiring prisoners on lockdown to kneel facing the wall with their hands behind their backs when served meals" did not constitute cruel and unusual punishment). Similarly, although Hope also generally alleges excessive noise and sleep deprivation, on the face of Hope's complaint, it is not clear if the alleged noise is serious enough to cause sleep deprivation or how much sleep Hope actually gets. Without such allegations, Hope has not alleged that he "has been deprived of the minimal measure of life's necessities." *See Chavarria v. Stacks*, 102 F. App'x 433, 436 n.2 (5th Cir. 2004). Finally, to the extent that Hope alleged an Eighth Amendment claim for a denial of psychiatric treatment, such a claim was not sufficiently briefed on appeal and is thus waived. *See* FED. R. APP. P. 28(a)(9)(A); *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001).

dried ejaculate, peeling and chipping paint, and old food particles" violated the Eighth Amendment). But taken together with the urine and feces on the wall, which Hope alleges has occurred "many times" throughout his twenty-six years in these conditions, it is more than plausible that Hope's decades of solitary confinement alongside such conditions of mold, urine, and feces have caused the physical and psychological deterioration he alleges, and it is clear that such an allegation is sufficiently serious to invoke Eighth Amendment concerns. *See Taylor*, 946 F.3d at 219; *Fussell*, 584 F. App'x at 271; *Smith*, 244 F. App'x at 584.

Additionally, we have previously found that ordering a prisoner back into a tear-gas-filled cell without supplies for decontamination could be sufficiently serious. *Cardona v. Taylor*, 828 F. App'x 198, 202 (5th Cir. 2020). Here, Hope has alleged that he has been exposed to pepper spray and tear gas in his cell "at least ten times through no fault of his own," that the cell was not decontaminated, and that on one occasion he was "left nude in a cell with the pepper spray still on his body [without anything] to clean it off with" for eight days. To the extent that Hope complains that he has suffered physical harm as a result of being exposed to such chemicals "unnecessarily dispensed" by Major Rehse, he has plausibly alleged a sufficiently serious condition. *See Knighten v. John*, No. 98-40644, 1999 WL 301376, at *2 (5th Cir. Apr. 29, 1999). Taking these allegations as true, these conditions are likewise sufficiently serious at this stage of the litigation.

Second, liberally construed, Hope's complaint adequately alleges that Major Rehse knew of and disregarded the excessive risks to Hope's health and safety due to these allegedly unsanitary conditions. Specifically, Hope alleges that "Major Rehse continue[s] to subject [him] to . . . unsanitary . . . living conditions," even though he is responsible for placing prisoners in "sanitary" cells. He further alleges that Major Rehse has instructed other

officers not to turn on the exhaust fans to clear the pepper spray and tear gas and is "responsible for the frequent moves and placing [him] into these unsanitary cells." Hope also goes on to allege that Major Rehse "*personally* saw the black mold*" on the cell wall. And these allegations are made against the backdrop of Hope's allegation that he is no longer an escape risk. Accepting the allegations in Hope's complaint as true, it is at least plausible that Hope's continued confinement in these conditions is not a matter of reasonable policy judgment but is instead deliberate indifference. *See Fussell*, 584 F. App'x at 271–72; *see also Hope*, 536 U.S. at 738.

In any event, by alleging that Major Rehse knew of the unsanitary conditions and chemical agents, which have an obvious risk of harm, Hope has sufficiently pleaded deliberate indifference as to those unsanitary conditions and the chemical agents to survive a motion to dismiss. *Cf. Farmer*, 511 U.S. at 848 (analyzing a prisoner's ability to prove facts such as subjective intent at summary judgment *after* the development of the factual record). Therefore, we vacate the district court's dismissal of Hope's Eighth Amendment claims against Major Rehse and remand for further proceedings.

At bottom, Hope has not had any opportunity to take discovery or develop the record. Whether or not the factual record, when developed more fully, will ultimately show that the Eighth Amendment was violated, the facts asserted in his pro se complaint plausibly allege as much as to Major Rehse.

## IV.

For the foregoing reasons, regarding Hope's official-capacity claims, we AFFIRM the dismissal of Hope's procedural due process claim under the Fourteenth Amendment. Next, we VACATE the judgment as to Hope's retaliation claim under the First Amendment as to Defendants Warden Harris and Major Rehse and REMAND for further proceedings consistent with this opinion. Similarly, we VACATE the judgment as to

No. 20-40379

Hope's Eighth Amendment claim *only* as to Defendant Major Rehse and REMAND for further proceedings consistent with this opinion. But we AFFIRM the dismissal of Hope's Eighth Amendment claim as to all other Defendants.

Finally, the district court is DIRECTED to consider in the first instance Hope's individual-capacity claims.

No. 20-40379

HAYNES, *Circuit Judge*, concurring in part and dissenting in part:

I concur with much of the majority opinion, but I respectfully dissent in part as indicated here.[1]  While I agree that there is subject matter jurisdiction for the official capacity claims (limited, as stated, to prospective injunctive relief), I respectfully dissent from the majority opinion's treatment of Hope's official capacity Eighth Amendment and due process claims[2]—I conclude that Hope's factual allegations are sufficient to state such claims against all Defendants in their official capacity.

As to the Eighth Amendment claims, the majority opinion concludes that Hope can proceed only against Rehse, and only in connection with certain conditions of his confinement.  To be sure, the grossly unsanitary conditions of Hope's confinement clearly support an Eighth Amendment claim.  But the majority opinion fails to meaningfully address *how* the extraordinary length of Hope's confinement affects Hope's other Eighth Amendment claims, failing to recognize that other Defendants were plausibly deliberately indifferent to Hope's suffering on multiple fronts.

In particular, the extreme length of Hope's solitary confinement should make it easier for him to prove an Eighth Amendment violation, or (at the very least) require additional justification from the State to avoid liability.

---

[1] In addition to the discussion above, I agree with the majority opinion that Hope has stated a claim for retaliation against Defendants Harris and Rehse, but I respectfully dissent from the portion of the majority opinion that narrows the scope of Hope's retaliation claim to just the seizure of Hope's typewriter.  Most significantly, the majority opinion disregards a key part of the retaliatory incident—namely, Hope being pepper sprayed and then left nude in a cell for eight days (all the while covered in the spray).  Hope's complaint makes clear that the pepper spray incident was *part of* the retaliation he experienced for filing a grievance; it naturally flowed from—indeed, happened only minutes after—the typewriter seizure.  The underlying constitutional violation is therefore the same: retaliation in violation of the First Amendment.  I would include those aspects in the remand.

[2] I agree with the remand of the individual claims.

*See Taylor v. Riojas*, 141 S. Ct. 52, 52–54 (2020) (per curiam) (concluding that *only six days* of confinement in "deplorably unsanitary conditions" was an obvious violation of the Eighth Amendment).[3]   That is so because the extreme length affects both prongs of the Eighth Amendment analysis.  As to the first prong—requiring a "sufficiently serious" deprivation—the duration of his solitary confinement acts as a significant aggravating factor, increasing the severity of the deprivation.  *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (acknowledging that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone" (emphasis omitted)); *see also Hutto v. Finney*, 437 U.S. 678, 685–87 (1978) (explaining how the length of confinement interacts with the conditions of confinement).  As to the second prong—demonstrating that a prison official acted with "deliberate indifference"—the duration of his solitary confinement makes it more likely that *all* of the Defendants were aware of a constitutional deprivation and disregarded the risk.  Simply put, it is harder for all Defendants to contend that they lacked awareness of Hope's conditions over the course of twenty-six years, especially given Hope's numerous complaints and the fact that he was a "high profile" inmate.  I conclude Hope should not be limited to pursuing such claims against only Rehse.

The majority opinion also minimizes the full picture of Hope's Eighth Amendment claims, narrowing them to just his complaints about the unsanitary conditions he experienced.  In so doing, it largely overlooks Hope's Eighth Amendment mental health claim, maintaining that he did not

---

[3] The *Taylor* decision illustrates how extreme conditions can give rise to an Eighth Amendment claim for even a short durational period.  141 S. Ct. at 52–54.  The calculus obviously runs in the other direction, as well—an extremely long duration may reduce the need to demonstrate harsher conditions.  *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) (observing that "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

sufficiently brief it on appeal.  That is incorrect—Hope has argued, in both his amended complaint and in his briefing on appeal, that he suffers from "anxiety, depression, visual and auditory hallucinations" and has "thoughts of suicide."  Moreover, he has repeatedly contended that the Defendants are aware of these conditions because Hope "has told them of his symptoms and because the harms of long-term solitary confinement are widely known." These allegations are sufficient to support an Eighth Amendment claim based on Hope's mental health.

At the very least, Hope stated such a claim against Joni White, Assistant Director of Classifications.  According to Hope's complaint, White "was contacted by outside advocates after years of Mr. Hope sending her letters asking questions about his continued isolation" (demonstrating her awareness of Hope's prolonged isolation).  White knew of "the effect that long-term isolation takes on the brain" due to her training (demonstrating her knowledge of the risk of long-term confinement).  Yet she maintained that she would neither allow for nor recommend Hope's release from solitary confinement (demonstrating that she disregarded this risk), all because of his 1994 escape.  Such actions suggest deliberate indifference; Hope should be allowed to pursue claims against such alleged conduct.

As for Hope's due process claim, the majority opinion errs on virtually every step of the *Mathews v. Eldridge* analysis.  As to the first prong—the private interest affected by the official action—the majority opinion issues the conclusory statement that Hope's liberty interest is "low"; it seemingly assumes that his liberty would be curtailed even in better prison conditions therefore Hope's deprivation is not over and above what would normally be incident to prison life.  However, even a prisoner can assert such a claim: Hope contends that he has been deprived of a whole host of opportunities previously available to him in the general population, including the ability to socialize, to attend religious services, to receive educational programming,

and to work.[4]  For over two decades, the beginning, middle, and end of every day of Hope's life has taken place in a single cell "no larger than a parking space."[5]  For the majority opinion to say—without citation or analysis, no less—that the extremely restrictive conditions of Hope's confinement merely implicate a "low" liberty interest thus overlooks the crux of his allegations.

As to the second prong—the risk of an erroneous deprivation—the majority opinion is correct that Hope had notice of the "factual basis" leading to his solitary confinement, but wrong to conclude that he clearly had "a fair opportunity for rebuttal." *Wilkinson v. Austin*, 545 U.S. 209, 225–26 (2005).  In particular, if Hope is correct that the forty-eight SCC hearings were a "sham," then it would be as if he never attended any hearings at all.  At this stage of litigation, his allegations plausibly support the conclusion that these proceedings were not, in fact, fair, and so it is plausible that he has been erroneously deprived of his liberty interests.

Finally, as to the third prong—the State's interest—I strongly disagree with the majority opinion's suggestion that the State retains any meaningful interest in continuing to isolate Hope in solitary confinement.  To be sure, there is little doubt that the State had a strong interest in keeping the public safe a few decades ago when Hope was first sent to solitary following

---

[4] Specifically, Hope identifies that:

> Prior to placement in solitary, he could see visitors face-to-face, attend religious services, participate in group vocational and educational programming, hold a job, socialize with other prisoners, and spend hours of his day outside his cell; now, he is confined to a 9'x6' cell for between 22 and 24 hours per day, allowed out only to exercise in a different enclosure.

In addition, Hope alleges that he has had only "one personal phone call since 1994" and is stripped searched, on average, four times a day.  In short, he plainly faces far more significant impositions on his liberty than he faced in normal prison life.

[5] Hope specifically alleges that he spends 23 to 24 hours a day in this cell.

No. 20-40379

his 1994 escape, but that justification expired over fifteen years ago when the "escape risk" designator was removed from his file (again, at this procedural stage, his factual allegations must be accepted as true). That is a concession that the State no longer has any interest in keeping Hope in solitary confinement. To say otherwise, as the majority opinion does, effectively bars valid due process claims based solely on an initial justification without giving any consideration as to how that justification has diminished—or, as here, completely evaporated—over time.[6]

For the foregoing reasons, I would reverse the district court's dismissal of Hope's Eighth Amendment claims with respect to his unsanitary conditions of confinement and his mental health against all Defendants, as well as the district court's dismissal of his procedural due process claim (and expand the retaliation claims as to Harris and Rehse). Because the majority opinion fails to do so, I respectfully dissent.

---

[6] Moreover, I conclude that the State's continued reliance on Hope's escape—over two decades ago—to justify keeping him in solitary confinement constitutes "grossly disproportionate" punishment, subject to Eighth Amendment scrutiny. *See Hutto*, 437 U.S. at 685 (acknowledging that "[c]onfinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards"); *see also Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016) (acknowledging that "[p]rotection against disproportionate punishment is the central substantive guarantee of the Eighth Amendment and goes far beyond the manner of determining a defendant's sentence"); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (acknowledging that conditions of confinement must not be "grossly disproportionate to the severity of the crime warranting imprisonment").