# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 24, 2025

Lyle W. Cayce
Clerk

No. 24-10812

———————

CADENCE BANK, *formerly known as* BANCORP SOUTH BANK;
CENTURY BANK,

*Plaintiffs—Appellees,*

*versus*

COLE WAYNE JOHNSON; CORD HENRY JOHNSON,

*Defendants—Appellants,*

CONSOLIDATED WITH

———————

No. 25-11078

———————

CADENCE BANK, *formerly known as* BANCORP SOUTH BANK;
CENTURY BANK,

*Plaintiffs—Appellees,*

*versus*

BRIDGELINK ENGINEERING, L.L.C.; COLE WAYNE JOHNSON;
CORD HENRY JOHNSON; BIGHORN CONSTRUCTION AND
RECLAMATION, L.L.C.; BIGHORN SAND AND GRAVEL, L.L.C.;
BIGHORN INVESTMENTS AND PROPERTIES, L.L.C.,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 4:23-CV-609, 4:23-CV-609

_____

Before SMITH, GRAVES, and DUNCAN, *Circuit Judges*.

STUART KYLE DUNCAN, *Circuit Judge*:

Appellants Cole Wayne Johnson and Cord Henry Johnson (the "Johnsons") appeal the summary judgment holding them liable as guarantors for loans made by Appellees Cadence Bank and Century Bank (the "Banks"). The Johnsons also claim the district court lacked subject-matter jurisdiction because the Johnsons and Cadence Bank are not diverse parties. We conclude that complete diversity exists and hold that the district court properly granted the Banks' summary judgment. AFFIRMED.

I

In August 2021, Bridgelink Engineering LLC ("Bridgelink")—an entity the Johnsons manage—entered into a credit agreement with the Banks. Under the agreement, Bridgelink received two loans: $20 million from Cadence Bank and $14 million from Century Bank. In exchange, Bridgelink promised to repay the loans with interest and to comply with certain financial covenants. Initially, Bridgelink's obligations were guaranteed by three LLCs the Johnsons manage: Bighorn Construction and Reclamation LLC; Bighorn Sand & Gravel LLC; and Bighorn Investments and Properties, LLC. A few months later, the Johnsons executed an agreement personally guaranteeing Bridgelink's obligations. That guarantee "remain[ed] in full force and effect until the Termination Date" of Bridgelink's loans.

The Johnsons' guaranty agreement also has an early-release clause (Section 9.3), which allows the Johnsons to be released from their obligations

No. 24-10812
c/w No. 25-11078

if three conditions are met. First, Bridgelink's loan had to be in good standing, *i.e.*, not in default.[1] Second, Bridgelink had to provide evidence of its compliance with certain financial covenants for two consecutive quarters. Third, the Banks had to confirm Bridgelink's compliance with any prepayment requirements imposed by Section 2.7(b)(ii) for two consecutive quarters. In practice, the last two conditions required Bridgelink to email compliance packages to the Banks' representatives, who would then acknowledge receipt, review the submissions, and confirm that Bridgelink had complied with its obligations for the quarter.

Q1 2022 is the first relevant quarter. In May 2022, Bridgelink emailed its financial-compliance documents to the Banks. About a month later, they confirmed that Bridgelink had complied with its covenants for the quarter. But by July 2022, Bridgelink had defaulted on its obligations. So the parties amended the credit agreement. Through the amendment, the Banks conditionally waived Bridgelink's events of default if it met certain conditions. Two are relevant here: (1) Bridgelink had to pay the Banks a waiver fee of $170,000; and (2) the Johnsons had to agree that Q1 2022 did not count as a compliant quarter under the Johnsons' early-release clause. The Banks assert, and Bridgelink does not contest, that it never paid the $170,000 waiver fee.

Soon after the amendment, Bridgelink sent its Q2 2022 compliance documents. The Banks acknowledged receipt and confirmed they would review Bridgelink's submission. Neither party submitted evidence showing the Banks had confirmed Bridgelink complied with its obligations for the

---

[1] Section 8.1 of the credit agreement defines events of default. Bridgelink's failure to make interest payments on its loans constitutes default under Section 8.1(b).

No. 24-10812
c/w No. 25-11078

quarter. But the Banks conceded Bridgelink's compliance at the summary-judgment hearing.

For Q3 2022, Bridgelink again emailed its compliance documents shortly after the quarter's end. The Banks acknowledged receipt. Again, neither party supplied proof of the Banks' confirmation. But unlike the previous quarter, the Banks contested Bridgelink's Q3 compliance at the summary-judgment hearing.

By Q4 2022, Bridgelink had defaulted. Bridgelink remained in default by failing to make payments in Q1 2023 too. None of Bridgelink's guarantors—the Johnsons and the Bighorn LLCs—ever made any payments toward those loans.

As a result, the Banks sued Bridgelink, the Johnsons, and the Bighorn LLCs for breach of contract in the Northern District of Texas. Because the Banks asserted only state-law claims, the district court relied on its diversity jurisdiction. About ten months later, the Banks moved for summary judgment. In response, the Johnsons argued there were disputes of fact about whether they had been released from their guaranty obligations before Bridgelink's December 2022 default. In support, the Johnsons submitted email threads purportedly showing the Banks' confirmation of Bridgelink's compliance with the financial covenants and prepayment requirements for Q1, Q2, and Q3 2022 to count toward the Johnsons early-release clause. The district court granted summary judgment, disagreeing that the Johnsons' submissions showed they had met the early-release conditions.

Only the Johnsons appealed. After the appeal was briefed, the Johnsons moved the district court to dismiss the case for lack of subject-matter jurisdiction. According to the Johnsons, Cadence was a citizen of both Texas and Mississippi when the complaint was filed. *See Cadence Bank v. Bridgelink Eng'g LLC*, No. 4:23-CV-609, 2025 WL 2699044,

4

No. 24-10812
c/w No. 25-11078

at *3 (N.D. Tex. Sept. 8, 2025). The district court deferred ruling on the motion until this appeal was resolved. *See* Fed. R. Civ. P. 62.1(a); *In re Ft. Wor. Chamber of Com.*, 100 F.4th 528, 536 (5th Cir. 2024). The Johnsons then submitted evidence purporting to show the lack of diversity and, shortly before oral argument in our court, they filed an opposed motion to supplement the appellate record.

We heard oral argument in April 2025 and remanded the case to the district court "for the limited purpose of determining whether subject-matter jurisdiction exists." *Cadence Bank v. Johnson*, No. 24-10812, 2025 WL 2576237, at *1 (5th Cir. May 19, 2025). The district court found complete diversity and denied the Johnsons' motion. *Cadence Bank*, 2025 WL 2699044, at *15. The case has now been resubmitted, and the Johnsons appeal both the district court's finding that it had subject-matter jurisdiction and its grant of summary judgment.

II

"An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the [district] court[] in a cause under review." *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934). We review subject-matter jurisdiction *de novo* as a question of law. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 636 (5th Cir. 2003)). We also review summary-judgment grants *de novo*. *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III

A

The district court properly exercised jurisdiction over this matter because Cadence is a Mississippi citizen and the Johnsons are Texas citizens.

Federal courts have diversity jurisdiction over civil actions in which the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a). Challenges to diversity of citizenship depend on "the state of facts that existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 571 (2004). To meet the diversity requirement, "the citizenship of each plaintiff" must be "diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

This case involves three types of parties: individuals, LLCs, and corporations. "For individuals, 'citizenship has the same meaning as domicile,' and 'the place of residence is prima facie the domicile.'" *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)). For LLCs, citizenship is based on "the citizenship of all of its members." *Harvey*, 542 F.3d at 1080. And for corporations, citizenship is based on a corporation's state of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1).

While the state of incorporation is straightforward, principal place of business is less so. The Supreme Court provided some guidance in *Hertz Corp. v. Friend*, resolving a circuit split in favor of the "nerve center" test. 559 U.S. 77, 92–93 (2010). Under that test, a corporation's principal place of business is the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *Ibid.* That place is usually "where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

No. 24-10812
c/w No. 25-11078

Before discussing Cadence's contested citizenship, we affirm the district court's findings on the other parties' citizenships. The Johnsons admitted they "are citizens of Texas." *Cadence Bank*, 2025 WL 2699044, at *5. And after tracing the ownership of the Bighorn LLCs through several layers of LLCs,[2] it turns out the Johnsons manage them all, making those LLCs Texas citizens too. *Harvey*, 542 F.3d at 1080. Finally, Century Bank—a corporation—submitted proof that it is "a New Mexico state-chartered bank that maintains its principal place of business in Santa Fe, New Mexico." *Cadence Bank*, 2025 WL 2699044, at *7. So far so good.

Turning to Cadence's citizenship, the Johnsons don't contest it was incorporated in Mississippi. *See ibid.* Their disagreement centers on Cadence's principal place of business. In the Johnsons' view, that place is in Houston, Texas, because (1) Cadence's executive officers reside in Houston and make decisions from there; (2) its SEC filings support that claim; and (3) other publications and company actions suggest Cadence's "corporate headquarters" is in Houston. *Ibid.* The Johnsons also suggest Cadence is estopped from claiming its principal place of business is in Tupelo, Mississippi, because it has "repeatedly claimed to be headquartered . . . in Houston, Texas[,] for the purpose of creating diversity jurisdiction in federal court." *Id.* at *8. Taken together, the Johnsons submit Cadence's principal place of business is in Houston, Texas, making it a Texas citizen. *Id.* at *7–8.

---

[2] Defendant Bighorn Sand & Gravel LLC's sole member is Defendant Bighorn Construction and Reclamation LLC; whose sole member is Defendant Bridgelink Engineering LLC; whose sole member is Bridgelink Power Operating LLC; whose sole member is Bridgelink Power, LLC; whose sole member is Bridgelink Power Holdings, LLC; whose sole members are the Johnsons. *Cadence Bank*, 2025 WL 2699044, at *5–6. And Defendant Bighorn Investments and Properties, LLC's sole members are the Johnsons. *Id.* at *6.

Cadence counters that its "principal place of business is, and always has been, [in] Tupelo, Mississippi." *Id.* at *7 (alteration in original). While it maintains a corporate headquarters in Houston, Texas, its bank headquarters is in Tupelo, Mississippi, which "is its principal place of business under *Hertz.*" *Ibid.* In support, Cadence notes that Tupelo, Mississippi, is where (1) it "regularly conducts Board, executive, and shareholder meetings"; (2) most of "its executive officers primarily office out of"; (3) its principal executive office is according to its SEC filings; and where (4) most of "its decision-making and operations takes place." *Ibid.* And contrary to the Johnsons' assertions, it has never pled anything inconsistent with its jurisdiction-based claims here. *Ibid.* Finally, Cadence asserts the Johnsons have failed to "meet *their* burden to warrant application of judicial estoppel." *Id.* at *8.

We agree with the district court's comprehensive analysis under *Hertz* that Cadence's principal place of business is in Tupelo, Mississippi.

We begin with judicial estoppel. At the outset, it is doubtful whether this circuit considers judicial estoppel for issues concerning subject-matter jurisdiction. *See, e.g.*, *Haverkamp v. Linthicum*, 6 F.4th 662, 671 n.8 (5th Cir. 2021) (collecting cases). But assuming *arguendo* that it does, the Johnsons had to show (1) Cadence "has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).

The Johnsons fail prong one. The district court identified two relevant pleadings with allegedly inconsistent statements. *Cadence Bank*, 2025 WL 2699044, at *9. The first states Cadence has its "principal place of business in Tupelo, Mississippi" and its "corporate headquarters . . . in Houston, Texas." *Ibid.* The second is an answer in which Cadence clarifies that its

"principal corporate office is in Houston, Harris County, Texas." *Ibid.* Neither statement is inconsistent with Cadence's position here, which is that its corporate headquarters is in Houston and that its bank headquarters is in Tupelo. Judicial estoppel therefore does not apply.

Next, we review the parties' competing submissions on the location of Cadence's nerve center. We agree with the district court that the evidence shows Cadence maintains two headquarters: one in Houston, Texas, the other in Tupelo, Mississippi. *Ibid.* But the bulk of the evidence supports Tupelo as its nerve center, not Houston.

Take its corporate officers. The most important officer—Cadence's CEO—has his primary office in Mississippi. *Id.* at *10. And of the twenty-two corporate officers who "direct, control, and coordinate Cadence Bank's activities," eight have their primary office in Mississippi and only six have their primary office in Texas. *Ibid.* Simply put, "a majority of Cadence Bank's executive officers . . . offic[e] outside of Texas with a concentration in Mississippi." *Id.* at *10. The location of Cadence's executives thus supports a principal place of business in Mississippi.

The location of Cadence's board of directors and management committees only reinforces that conclusion. The Management Committee "set[s] important policies and make[s] key decisions for Cadence" and is comprised of only certain "named executive officers ('NEOs')" chosen by Cadence's board of directors. *Id.* at *13. Cadence submitted evidence—uncontested by the Johnsons—that "(1) a majority of the NEOs on the committee maintain primary offices in Tupelo, (2) a majority of the committee attend weekly in-person meetings, and (3) the board of directors hold their meetings in Tupelo, which a majority attend in person." *Ibid.*

On balance, the evidence shows Cadence's principal place of business is Tupelo, Mississippi. As a result, Cadence is a citizen of Mississippi. And

No. 24-10812
c/w No. 25-11078

as discussed above, Century is a citizen of New Mexico. The Johnsons and the Bighorn LLCs, by contrast, are citizens of Texas. So complete diversity exists among the parties. The district court therefore did not err in denying the Johnsons' motion to dismiss for lack of jurisdiction.

B

Nor did the district court err by granting summary judgment in favor of the Banks on their breach-of-contract claims.

Under Texas law, a claim for breach of contract requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l v. Egle Grp.*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001)). Breach "occurs when a party fails to perform a duty required by the contract." *Id.*

As the district court correctly concluded, neither party disputes "there were valid contracts, Defendants have failed to perform under those contracts, [or that] Plaintiffs have sustained damages as a result of the Defendants' breach." *Cadence Bank v. Bridgelink Eng'g, LLC*, No. 4:23-CV-609, 2024 WL 2786914, at *3 (N.D. Tex. May 30, 2024). All the Johnsons argue on appeal is that they met the conditions for early release from their guaranty obligations before Bridgelink's December 2022 default.

They did not. Recall the three release conditions: (1) Bridgelink's loan could not be in default; (2) Bridgelink had to submit evidence of its compliance with certain financial covenants for two consecutive quarters; and (3) the Banks had to confirm Bridgelink complied with certain prepayment requirements for two consecutive quarters. The Johnsons argument fails because they can't even show they met the first condition, let alone the latter two.

10

No. 24-10812
c/w No. 25-11078

Bridgelink's loan has been in default since Q1 2022. Under the credit agreement, Bridgelink's failure to make its first loan interest payment constituted default under Section 8.1(b) of the credit agreement. The Johnsons don't contest this default. To be sure, the Banks agreed to waive that default if certain conditions were met, such as Bridgelink's paying the Banks a $170,000 waiver fee. But according to the Banks, Bridgelink never paid that fee. And because the Johnsons provide nothing to counter that assertion, there is no dispute that Bridgelink was in default since at least Q1 2022. The district court therefore properly granted summary judgment in the Banks' favor.

Our conclusion remains the same even if we were to set aside Bridgelink's prior default and consider Bridgelink's arguments for the latter two release conditions. To begin with, the parties' amendment in July 2022 eliminated Q1 2022 from counting toward the release-clause's consecutive-quarter requirement. So that means Bridgelink had to meet both conditions—submission of compliance documents for financial covenants and the Banks' confirmation of compliance with certain prepayment requirements—for Q2 and Q3 2022.

True enough, the Banks conceded at the summary-judgment hearing that Bridgelink had met the latter two conditions for Q2 2022. But they made no such concession for Q3 2022. Rather, the Banks expressly contested Bridgelink's compliance for that quarter. The Johnsons point to the Banks' confirmation-of-receipt email for Q3 2022 as evidence that the Banks confirmed Bridgelink's compliance with the prepayment requirements imposed by Section 2.7(b)(ii). They are incorrect: confirmation of receipt is not the same as confirmation of compliance.

The parties' ordinary practice shows why. For Q1 2022, the Banks acknowledged receipt and then *separately confirmed a month later* that

11

Bridgelink had complied with its covenants for the quarter. Or consider Q2 2022, when the Banks again only acknowledged receipt of Bridgelink's compliance documents. The court relied on the Banks' express concession at the summary-judgment hearing—not this acknowledgment email—as proof of Bridgelink's compliance for that quarter.

So against that backdrop, we conclude the Banks never confirmed Bridgelink's compliance with the prepayment requirements imposed by Section 2.7(b)(ii) for Q3 2022. And without two consecutive quarters of Bridgelink's compliance with the latter two conditions, the Johnsons cannot prove they were released from the guaranty agreement before Bridgelink's December 2022 default. They are therefore liable for breaching their guaranty agreement.

IV

The district court's judgment is AFFIRMED.[3]

---

[3] All pending motions are DENIED.